IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Dwayne Bragg,<br>Plaintiff,<br><br>v.<br><br>D. Hackworth, et al.,<br>Defendants. | 1:10cv693 (GBL/IDD) |

## MEMORANDUM OPINION

This Matter is before the Court on a Motion to Dismiss filed jointly by the defendants in this action. Dwayne Bragg, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to excessive force during his incarceration at Chesapeake City Jail. Plaintiff also alleges that his jail file contains "false" information and requests an injunction ordering the production of all the documents in his file. Defendants filed a joint Motion to Dismiss on August 8, 2011. Plaintiff was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a response. For the reasons that follow defendants' Motion to Dismiss will be granted in part and denied in part.

### I. Background

Plaintiff's complaint sets out three claims, each of which is discussed below.

A. <u>Claim (1) Request for Injunctive and Declaratory Relief</u>

In his first claim, plaintiff requests declaratory and injunctive relief against Major Hackworth. Regarding the request for injunctive relief, plaintiff requests production of and access to "all documents and details in [his] file that may interfere with [his] custody level and incarceration in segregation." Am. Compl. at 7, ECF No. 29. The basis for this claim is that

1

plaintiff allegedly found a form in his prison file that he feels "is not true." Id. Plaintiff argues that if he has access to his file he can establish that he should be released from segregation into population. Id.

The next portion of plaintiff's first claim is a request for declaratory relief against Major Hackworth. To the extent plaintiff's allegations are comprehensible, it appears that plaintiff is complaining of an alleged "don't shoot, don't ask policy." Id. Plaintiff asserts that the jail's mental health doctors and correctional officers "do not come to see [him]" so he is "forced to act out" to get attention. Id. This allegedly results in him shouting "don't shoot" and officers replying "then don't ask." Id. After this exchange, plaintiff alleges that the guards "walk away without questions answered or any problem resolved." Id. As relief, plaintiff requests a court declaration to "halt" the alleged "don't shoot, don't ask" policy. Id. at 19.

B. Claim (2): Use of Excessive Force on June 12, 2009:

Plaintiff's next claim concerns an incident that allegedly occurred during meal distribution on June 12, 2009. Id. at 17. Plaintiff alleges that when he picked up his meal tray from Deputy Wilkerson he realized it was the wrong tray. Id. Plaintiff brought this to Deputy Wilkerson's attention. Id. Wilkerson allegedly became upset and "snaubish" [sic] with plaintiff and ordered him to take the tray and return to his cell. Id. When another jail official came to collect empty trays, plaintiff told her that he wanted to speak to Wilkerson and the sergeant because he received the wrong tray, which plaintiff claims was a recurring problem. Id.

According to plaintiff, the "next thing [he] kn[e]w all the deputies in the building were at [his] door." Id. However, according to plaintiff's allegations Wilkerson did not come to plaintiff's cell and plaintiff did not see him "until after the incident." Id. Plaintiff alleges that at this time he knelt "down with [his] cup of juice in [his] left hand to pick the tray up off the floor

2

[and] slipped [his] left hand with the cup in it through the chuck hole, spilling the juice." Id. at 17-18. At this time, "one of the officers" "slammed" plaintiff's hand inside the tray slot and "busted [plaintiff's] left thumb open." Id. at 18.

Again, plaintiff's allegations become difficult to follow, but he states that he told the officers he was bleeding and that he remembers Sergeant Brinkley telling him to go to the back of his cell and stay against the wall. Id. Because plaintiff thought it was taking too long for medical to arrive, he alleges that he kept walking back to the front of his cell to tell the officers he was bleeding. Id. Plaintiff then began to feel faint and Sergeant Brinkley allegedly patted plaintiff on the back and told him "just lay there." Id. At this point, Deputy "Lucas/Smith" came in and began cleaning the blood off the floor. Id. Plaintiff then lay down on his stomach and heard Sergeant Brinkley tell the officers to get "the cameras rollin[g]" and to "keep it clean." Id.

Minutes later, plaintiff states that several officers rushed into his cell in "full protective gear" while plaintiff was against the wall with his back to them. Sergeant Brinkley then allegedly said "ok, everybody step back." Id. At this point, plaintiff alleges he became confused and "turned around and knelt down." According to plaintiff, defendant Chiganboam[1] then pulled out a stun gun and allegedly said to plaintiff "[d]on't you move, don't move! I'm gonna shoot you!" Id. Plaintiff alleges that he was scared by this statement and "tried to jump out of the

---

[1] Plaintiff lists Sergeant Higginbotham and Sergeant Chignaboam as defendants in this action. It appears that plaintiff's references to Sergeant Chiganboam are actually intended to be allegations against Sergeant Higginbotham. Therefore, Sergeant Chiganboam, who does not appear to be an employee at Chesapeake City Jail, will be dismissed from this action. See Mem. in Supp. Mot. Summ. J. at n.1; ECF No. 44.

way." At that point, Sergeant Chiganboam shot plaintiff with a "500,000 volts taze gun."[2] Id. at 18-19. Afterwards, plaintiff was taken to medical. Id. at 19.

### C. Claim 3:

Plaintiff's third claim concerns an alleged incident of excessive force that occurred on March 4, 2010. Id. at 13. Plaintiff alleges that after breakfast Deputy Tisdale came through plaintiff's pod announcing cell inspection. Id. The allegations are difficult to follow, but it appears that plaintiff was heavily medicated and claims that he did not hear Deputy Tisdale when he made the initial cell inspection announcement. Id. Plaintiff alleges that Deputy Tisdale then returned and began asking certain inmates for their names in a "very loud" voice. Id. At this point, plaintiff allegedly awoke and asked Deputy Tisdale why he was taking names. Id. According to plaintiff, Deputy Tisdale responded "[b]ecause you didn't get your lazy asses up when I told you so." Id. Plaintiff alleges that in response he muttered "fuck you" under his breath and sat back down on his bunk. Id. Deputy Tisdale allegedly responded by saying "fuck you" to plaintiff in an "angry tone." Id. at 13-14. Then plaintiff got up and went to the cell bars and said "fuck you and your momma." Id. at 14. Deputy Tisdale asked plaintiff what he said, to which plaintiff replied "you heard me!" At this point, Deputy Tisdale contacted someone on his radio. Id.

Deputy "Johnson/Thompson"[3] arrived at plaintiff's cell and told plaintiff to return to the bars so he could place handcuffs on the plaintiff. Id. at 14. Plaintiff allegedly asked Deputy

---

[2] In his response to the Motion to Dismiss, plaintiff explains the difference between a stun gun and a taser. According to plaintiff, a stun gun "shoots out wires—2 prongs" and a taser gun is a "voltage that pops when being used." Although plaintiff makes it a point to distinguish between the two, he uses them interchangeably in this portion of the complaint.

[3] Throughout the complaint, plaintiff refers to Deputy "Johnson/Thompson." In his response to the Motion to Dismiss, plaintiff explains that he used "Johnson/Thompson" because he "was not aware of either officer[s] full name." However, plaintiff states that he now "agree[s] that Deputy

4

Johnson/Thompson why he was being handcuffed and then asked to speak to Sergeant Fitzgerald. Id. According to plaintiff, "before he kn[e]w it, all the deputies in the building" came to his cell. Id.

Sergeant Fitzgerald was allegedly at the front of the group of deputies "pointing and threatening to find a spot to taze [plaintiff]." Id. Plaintiff alleges that he had a book in his hand and was trying to "block [the tazer] and talk to [Sergeant Fitzgerald] at the same time." Id. Sergeant Fitzgerald then allegedly handed a "stun gun" and a "tazer gun" to an unidentified deputy. Id. A second unidentified deputy opened up the cell door and Deputy Lucas[4] began walking quickly towards plaintiff so plaintiff knelt down. Id. Deputy Lucas allegedly put plaintiff in a headlock. Id. Plaintiff alleges that he "remember[s] seeing Sergeant Fitzgerald and Deputy Johnson/Thompson and Deputy Smith on [his] back." Sergeant Fitzgerald allegedly started tasing plaintiff on the right side of his waist. Id. Plaintiff alleges that he then went unconscious. Id.

When plaintiff awoke, he states that he remembers feeling off balance and that he kept falling out of his chair. Id. at 14-15. When plaintiff began to realize "where [he] was" Deputy Johnson/Thompson and Smith[5] starting carrying him down the hall into another pod. Id. at 15. The deputies allegedly "slung" plaintiff face first into a steel bunk. Id. Plaintiff alleges that when he finally came to his senses he had "deep gashes over [his] forehead, blood all over [his] face" his "tooth busted out," a "black and blue tongue" and "black and blue taze markes all over [his] back, sides, [and] shoulders." Id.

---

Thompson should not be included in[] this claim" and asks the Court to dismiss defendant Thompson. Accordingly, defendant Thompson will be dismissed from this action.
[4] Efforts to effect service on defendant Lucas are ongoing.
[5] Efforts to effect service on defendant Smith are ongoing.

Because of his condition, plaintiff alleges that a nurse told the deputies that he needed medical attention. Plaintiff alleges that before being brought to medical he was put in a "strap chair for no reason [because he] was not resisting or anything." Id. Deputy Smith and Deputy Johnson/Thompson were allegedly slamming plaintiff around and strapping the chair straps very tight. The allegations become difficult to follow at this point, but it appears that plaintiff asserts that Deputy Johnson/Thompson started kneeing plaintiff in the waist and groin in an attempt to make plaintiff sit on his hands. Id. Plaintiff also states that officers "were just passing [him] around taking they licks off me one by one" and then started "hitting him with the taze gun for no reason." Id.

## II. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007) (internal citations omitted); see Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Twombly, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (internal citations omitted).

To survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." Id.; Twombly, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. Twombly, 550 U.S. at 556 n.3.

### III.   Analysis

A. Claim 1:

1) Injunctive Relief

Plaintiff's claim for injunctive relief against Major Hackworth must fail. First, plaintiff does not allege that Major Hackworth was involved in placing the alleged false information into plaintiff's prison file, nor does plaintiff allege that Major Hackworth had the authority to permit plaintiff to review his prison file, but refused to do so. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.").

Moreover, injunctive relief is not appropriate in this case because there is "no constitutional requirement that a prisoner have access to his [prison] file."[6] Paine v. Baker, 595

---

[6] In his response to the defendants' Motion to Dismiss, plaintiff confuses a prisoner's right to have erroneous information expunged from his prison file with a prisoner's right of access to that

F.2d 197, 200 (4th Cir. 1978); Franklin v. Shields, 569 F.2d 784, 800 (4th Cir. 1978); Anthony v. Whitener, No. 5:06cv134-MU-02, 2006 WL 3240750, at *1 (W.D.N.C. Nov. 7, 2006). Therefore, defendants' Motion to Dismiss, insofar as it relates to injunctive relief against defendant Major Hackworth must be granted.

2) Declaratory Relief

Likewise, plaintiff's claim for declaratory relief against Major Hackworth must also fail. In determining whether a plaintiff is entitled to declaratory relief "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Mobil Oil Corp. v. Att'y Gen. of Va., 940 F.3d 73, 75 (4th Cir. 1991) (citing Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 23 (1941)). Under § 1983, a plaintiff requesting declaratory relief "must show a realistic threat of future harm." Goldstein v. Moatz, 364 F.3d 205, 219 n.17 (4th Cir. 2004) (citing City of Los Angles v. Lyons, 461 U.S. 95, 104 (1983)).

In this case, plaintiff's allegations do not establish that he is entitled to declaratory relief against Major Hackworth. Most importantly, plaintiff does not allege any facts establishing Major Hackworth, the only named defendant in relation to this claim, is involved in the alleged "don't shoot, don't ask" policy. Plaintiff does not allege that Major Hackworth created,

---

file. It is well settled that there is no general right of access to a prison file, however; the Fourth Circuit has held that in "certain limited circumstances" a prisoner has a right to have his "correctional file free from allegedly incorrect prejudicial information." Paine, 595 F.2d at 201. In this case, plaintiff clearly seeks access to his prison file, as he requests "all documents and details in [his] file" and states "I am seeking an injunction of 'document request.'" Therefore, for the reasons discussed above, plaintiff is not entitled to the injunctive relief he requests.

8

condoned, enforced, or even knew of the alleged don't ask, don't tell policy.[7] Furthermore, plaintiff's conclusory assertions regarding the alleged policy fall far short of establishing a "substantial controversy" or a "realistic threat of future harm." Plaintiff does not provide any information detailing the policy or how it is employed. Moreover, plaintiff does not allege any facts indicating that there is a realistic probability that he will be harmed by the policy in the future. Therefore, defendants' Motion to Dismiss insofar as it relates to declaratory judgment against Major Hackworth must be granted.

B. Claim (2) and (3)

Plaintiff's second and third claims concern allegations of excessive force. To state an Eighth Amendment claim that defendants used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim

---

[7] In his response to the Motion to Dismiss, plaintiff raises new allegations regarding Major Hackworth's knowledge of the alleged policy. Specifically, plaintiff argues that Major Hackworth gained knowledge of the alleged policy through plaintiff's grievances. When matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to exclude the additional material. See Fed. R. 12(d); Fonte v. Bd. Managers of Cont'l Towers Condo., 848 F.3d 24, 25 (2d Cir.1988). "Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleadings for purposes of 12(b)(6)." Id.
In this case, the Court will exclude these new factual allegations raised in plaintiff's response. It must be noted, however, that even if the Court were to consider these allegations they would still fail to establish liability on behalf of Major Hackworth because no liability exists under § 1983 for a prison administrator's response to a grievance or appeal. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Brown v. Va. Dep't Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009).

involving only de minimis injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition de minimis uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernible injury "almost certainly" fails to state a valid excessive force claim. Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

1. Sergeant Stahler

Plaintiff names Sergeant Stahler as a defendant in this action. To state a cause of action under § 1983, a plaintiff must allege facts indicating plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him.

Here, plaintiff fails to state a claim against Sergeant Stahler. The Amended Complaint contains no factual allegations regarding Sergeant Stahler. To the extent plaintiff attempts to assert new factual allegations regarding Sergeant Stahler in his response to the Motion to Dismiss, these new allegations are outside of the pleadings. See Fed. R. 12(d); Fonte v. Bd. Mangr. Cont'l. Towers Condo., 848 F.3d 24, 25 (2d Cir.1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleadings for purposes of 12(b)(6).") Therefore, the Court will exercise its discretion to exclude this material. Id. Accordingly, defendants' Motion to Dismiss, insofar as it relates to Sergeant Stahler must be

granted.

2. <u>Deputy Wilkerson and Deputy Tisdale</u>

Plaintiff alleges that defendant Wilkerson spoke rudely to plaintiff during meal distribution on June 12, 2009. Similarly, plaintiff's only allegation against defendant Tisdale is that defendant Tisdale called him a "lazy ass" and said "fuck you" to plaintiff. Thus, plaintiff's complaint fails to allege either of these defendants used excessive force with regards to the plaintiff.

Construing plaintiff's complaint liberally, as is appropriate with <u>pro se</u> litigants, it appears that plaintiff is asserting a claim of verbal abuse against these two defendants. Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation. See <u>Collins v. Cundy</u>, 603 F.2d 825, 827 (10th Cir. 1979), <u>cited favorably in, Moody v. Grove</u>, No. 89-6650, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989). While a verbal threat combined with action apparently designed to carry out that threat may state an Eighth Amendment claim, <u>see Hudspeth v. Figgins</u>, 584 F.2d 1345, 1348 (4th Cir. 1978), plaintiff has not connected any comments or actions by Wilkerson or Tisdale with any physical harm. Therefore, plaintiff's claims against Wilkerson and Tisdale must be dismissed and the defendants' Motion to Dismiss insofar as it relates to defendants Wilkerson and Tisdale must be granted.

3. <u>Defendants Sergeant Fitzgerald, Sergeant Brinkley, and Sergeant Higginbotham</u>

Mindful of the liberality with which a <u>pro se</u> complaint must be construed, the Motion to Dismiss must be denied with regards to defendants Sergeant Fitzgerald, Sergeant Brinkley, and Sergeant Higginbotham. Here, taking all of the allegations of the amended complaint as true, the plaintiff has at least stated a plausible claim of excessive force against these defendants. The

11

defendants urge the Court to find their use of force was justified because plaintiff was being "uncooperative," "combative" and "refusing to follow instructions." However, when only the allegations in the amended complaint are considered, as is appropriate in a 12(b)(6) analysis, it is unclear whether the use of tasers and stun guns were necessary under the circumstances. Certainly, the allegations in the complaint do not suggest that the defendants were justified in tasing the plaintiff until he went unconscious during the March 4, 2010 incident. Furthermore, plaintiff's alleged injuries after the March 4, 2010 incident, including deep gashes on his forehead, a lost tooth, and a black and blue tongue do not rule out the possibility that the amount of force used may have been excessive. Therefore, based solely on the allegations in the amended complaint, the Court cannot determine whether the amount of force defendants employed was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Accordingly, defendants' Motion to Dismiss insofar as it relates to Sergeant Fitzgerald, Sergeant Brinkley, and Sergeant Higginbotham must be denied without prejudice to defendants ability to file a properly supported motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the Motion to Dismiss will be granted in part and denied in part. An appropriate Order and Judgment shall issue.

Entered this __13th__ day of __February__ 2012.

Alexandria, Virginia

_/s/_
Gerald Bruce Lee
United States District Judge